UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

AZUCENA RAMOS PEREDA,                                                    Petitioner,

v.                                                          Civil Action No. 4:26-cv-211-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement et al.,                                            Respondents.

* * * * *

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Azucena Ramos Pereda, a noncitizen resident of the United States currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending her removal proceedings.  She alleges that her detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.  (Docket No. 1)  The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 4), and they have submitted briefing setting out their respective legal arguments (D.N. 6; D.N. 7).  After careful consideration, the Court will grant Ramos Pereda's petition for the reasons explained below.

**I.**

Ramos Pereda is a native and citizen of Mexico.  (D.N. 1, PageID.5 ¶ 16; *see* D.N. 1-1, PageID.28)  She entered the United States without inspection in 1990, when she was approximately four years old.  (D.N. 1, PageID.5 ¶ 22)  Ramos Pereda is married to a lawful permanent resident and has two United States–citizen children.  (*Id.*, PageID.6 ¶ 25)  On January 28, 2026, Indiana State Police arrested Ramos Pereda for operating a vehicle while intoxicated; that charge remains pending.  (D.N. 6-1, PageID.80; D.N. 1-2, PageID.30)  On January 30, 2026, an administrative arrest warrant was issued (*see* D.N. 6-3, PageID.86), and federal immigration

1

authorities lodged an immigration detainer with the Jackson County, Indiana Jail. (*See* D.N. 6-1, PageID.80)  Ramos Pereda was taken into U.S. Immigration and Customs Enforcement (ICE) custody on March 15, 2026. (*See id.*)  That same day, Ramos Pereda was placed in removal proceedings via a Notice to Appear, which charged her as "an alien present in the United States who has not been admitted." (D.N. 1-4, PageID.34)  Ramos Pereda remains detained at the Grayson County Detention Center in Leitchfield, Kentucky. (D.N. 1, PageID.3 ¶ 8; D.N. 6, PageID.74)

Ramos Pereda seeks a writ of habeas corpus against Chicago ICE Field Office Director Samuel Olson, Department of Homeland Security Secretary Markwayne Mullin, the U.S. Attorney General, Acting Director of ICE Todd Lyons, and Grayson County Jailer Jason Woosley. (*See* D.N. 1, PageID.5 ¶¶ 17–21)  Ramos Pereda alleges that her detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, and due process under the Fifth Amendment. (*See id.*, PageID.21–22 ¶¶ 76–83)  Ramos Pereda asks the Court to order her immediate release or, in the alternative, a bond hearing. (*See id.*, PageID.24)  Respondents argue that (1) Ramos Pereda is mandatorily detained under § 1225(b)(2) as an applicant for admission who is seeking admission; (2) Respondents' "reading of Section 1225(b)(2) does not render Section 1226(c) superfluous"; and (3) Ramos Pereda's detention does not violate due process because she "was afforded all the process [s]he was due" under § 1225.[1] (*See* D.N. 6, PageID.74–77; D.N. 6-5, PageID.121, 123)

---

[1] Respondents do not contest that the Court has jurisdiction to review Ramos Pereda's petition (*see* D.N. 6-5, PageID.105). *See Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025) ("Section 2241 [of title 28] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))).  Nor do Respondents argue whether Ramos Pereda must exhaust administrative remedies. (D.N. 6-5, PageID.119 n.4)  Therefore, the Court will not address these issues.

## II.

### A.        Immigration and Nationality Act

Ramos Pereda asserts that 8 U.S.C. § 1225(b)(2) "does not apply to [noncitizens like her] who previously entered the [United States] and have been residing [here] prior to being detained and placed in removal proceedings by" federal immigration authorities.  (D.N. 1, PageID.21 ¶ 77) She maintains that § 1226(a) applies to her detention instead.  (*See id.*)  Respondents argue that § 1225(b)(2) requires Ramos Pereda's detention, incorporating by reference arguments from the appellants' brief in *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 6-5)

Respondents' arguments are nearly identical to those made in *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025).  The Court thus summarizes and incorporates by reference its reasoning and determination from that decision.  There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," *id.* at *5 (quoting § 1225(a)(1)), but that he was not "seeking admission" because he resided in the United States at the time of his arrest.  *See id.* at *5, *7. Likewise, Ramos Pereda is an applicant for admission because she is an "alien present in the United States who has not been admitted," § 1225(a)(1) (*see* D.N. 1-4, PageID.34), but she is not "seeking admission" under § 1225(b)(2)(A) because she lived in the United States when immigration authorities recently detained her (*see* D.N. 6-1, PageID.80).  *See Alonso*, 2025 WL 3083920, at *6.  "[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering."  *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 487 (E.D.N.Y. 2025).  Ramos Pereda was arrested in the interior of the United States and thus does not fall within that category.  *See Alonso,* 2025 WL 3083920, at *6.

3

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 6-5, PageID.139) They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.156) As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'" 2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)). "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (citation omitted). Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, Respondents' reading of § 1225 would render § 1226(c) superfluous. *See id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],' ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)); *Hurtado v. Jamison*, No. 25-6717, 2025 WL 3678432, at *5 (E.D. Pa. Dec. 18, 2025) ("[T]hese recent amendments drive home the conclusion that Congress never intended § 1225(b)(2)(A) to apply to noncitizens who have been permitted to come into [the United States], on parole or otherwise, and have been residing in this country for years.").

Respondents also maintain that their position is supported by the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). (*See* D.N. 6-5, PageID.145–47) *Jennings*

considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 6-5, PageID.147) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303. The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

In accordance with its prior decisions addressing the same issue, the Court concludes that Ramos Pereda is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez*, 815 F. Supp. 3d at 582; *Alonso*, 2025 WL 3083920, at *8.

**B.    Due Process**

Ramos Pereda asserts that her detention without a bond hearing violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.22 ¶¶ 79–83) Respondents argue that "Section 1225(b)(2) does not afford [Ramos Pereda] the ability to obtain release on bond, and so the Due Process Clause does not either." (D.N. 6-5, PageID.148) Because Ramos Pereda is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is futile. *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457

U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Ramos Pereda "has a significant private interest in not being detained." *Id.*; *see Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9. Moreover, "the risk of erroneously depriving [Ramos Pereda] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 797 F. Supp. 3d at 785; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 808 F. Supp. 3d at 493. Thus, because all three *Mathews* factors weigh in Ramos Pereda's favor, the Court concludes that her detention violates due process. *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Ramos Pereda's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Ramos Pereda, and, in the event she is arrested and re-detained, provide her with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a).  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **May 6, 2026**.

(2)     Upon receipt of the notice of compliance, this matter will be **CLOSED**.

May 5, 2026

**David J. Hale, Chief Judge**
**United States District Court**

7